IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JONATHAN CHRISTOPHER WARD                                                                              PLAINTIFF

v.                                              Case No. 4:22-cv-04119

SHERIFF JACKIE RUNION;
WARDEN JEFFIE WALKER;
CAPTAIN GOLDEN ADAMS; and
AL LANDRETH                                                                                           DEFENDANTS

## ORDER

Before the Court is the Report and Recommendation ("R&R") filed January 12, 2024, by the Honorable Christy D. Comstock, United States Magistrate Judge for the Western District of Arkansas. ECF No. 29. Judge Comstock recommends granting in part and denying in part Defendants' Motion for Summary Judgment (ECF No. 18) as follows: (1) all claims against Defendant Landreth be dismissed with prejudice; and (2) all claims against Defendants Runion, Walker, and Adams, in their official and individual capacities remain for further litigation. ECF No. 29. Defendants responded with objections. ECF No. 30. The Court finds the matter ripe for consideration.

### I. BACKGROUND

This is a civil rights action filed under 42 U.S.C. § 1983. Plaintiff alleges that Defendants violated his constitutional rights to freedom of speech, freedom of press, and conditions of confinement when Defendants continually denied Plaintiff the delivery of his subscription to a local newspaper during July of 2021 to December of 2022. ECF No. 1. The Court notes that Judge Comstock articulately presented the factual and procedural background of the case in the R&R, of which the Court largely reproduces below. *See* ECF No. 29, pp. 1-8.

### A. Factual Background

Plaintiff is currently incarcerated in the Arkansas Department of Corrections-Ouachita River Unit. However, at all times relevant to this matter, Plaintiff was a pretrial detainee in the Miller County Detention Center ("MCDC") in Texarkana, Arkansas. ECF No. 1, p. 2. Additionally, at all times relevant to this matter, Defendant Runion was the Sheriff of Miller County, Defendant Walker was the Warden of the MCDC, Defendant Adams was the Captain of the MCDC, and Defendant Landreth[1] was the Jail Administrator and Grievance Officer at the MCDC. *Id*.

The facts in this matter are largely undisputed.[2] On July 9, 2021, Plaintiff was booked into the MCDC on charges of possession of drug paraphernalia, possession of a controlled substance, fleeing, and possession of a firearm. ECF No. 20-2. Thereafter, as Plaintiff alleges in his Complaint (ECF No. 1), he was denied delivery of his subscription to the Texarkana Gazette, a local newspaper, per an MCDC policy banning newspapers (the "Policy"). ECF No. 1, p. 4-5.

On November 7, 2022, Plaintiff submitted a grievance stating: "My family ordered me a newspaper subscription, but I was unable to receive it. They had to cancel it. MCDC has an unconstitutional policy that bans inmates from receiving newspaper and publications." ECF No. 20-3, p. 1. The same day, Defendant Landreth responded: "You are able to receive news and information via the television provided in your unit." *Id*. Also on November 7, 2022, Plaintiff submitted a second grievance stating:

> This is an appeal to my last grievance, I cannot control the tv and haven't been able to watch the news. I have a right to read newspapers and have freedom of press. Also those companies have the right to have access to send their material to inmates.

---

[1] Plaintiff originally named "Officer Admin G (John Doe)" as the fourth Defendant in his Complaint. ECF No. 1. On March 15, 2023, Defendants filed their Answer and identified Al Landreth as the "John Doe." ECF No. 13.
[2] In his Response to Defendants' Motion for Summary Judgment, Plaintiff does not dispute any factual contentions made by Defendants in their Indisputable Statement of Facts. *See* ECF Nos. 26, 27. However, as explained below, there are some facts in contention as evidenced through the exhibits on the summary judgment record.

> MCDC policy is a direct violation to freedom of speech. See Human Rights Defense Center vs. numerous county jails around the country. They have won those cases for the same newspaper ban that [MCDC] has.

ECF No. 20-3, p. 2. On November 8, 2022, Defendant Landreth replied: "I have responded to these issues in previous correspondence with you." *Id*.

Defendants did not cancel Plaintiff's newspaper subscription. Instead, the Policy states that any newspapers delivered to a MCDC detainee shall be placed in that detainee's property. ECF No. 20-7, p. 4. Defendants provided a copy of the Policy titled "Inmate Mail SOP 10.08." ECF No. 20-6. The Policy states in pertinent part:

> It is the policy of the [MCDC] to provide inmate mail privileges. Inmates shall be encouraged to maintain legitimate correspondence with family and other persons immediately concerned with the inmate's welfare.
> . . .
> Inmates are allowed to access publications under the following guidelines:
>
> 1) Only publications sent directly from a legitimate (recognized) publisher or vendor (such as a retail book seller) will be considered for approval by the Jail Director or designee. This includes Bibles.
> 2) When a publication has been disapproved, the publications will be logged into the inmate's property inventory. A property receipt will be generated and signed by the inmate receiving the publication. A copy of the signed property receipt will be given to the inmate, and one placed in the inmate's case management folder.
>    a) Inspection of incoming publications shall be:
>       (1) For content and contraband.
>       (2) All packing and original wrapping will be discarded.
> 3) The Captain will disapprove a publication if it is deemed an immediate and/or tangible threat to the security or good order of the jail or staff. This includes but is not limited to content of publications used to introduce contraband.
> 4) Inmates shall not be permitted to have more than ten (10) books in their possession at any given time. This provision excludes religious materials and legal or school related books. Excess materials may be mailed out to a party of the inmate's choosing at the inmate's expense, or they may be donated to the Texarkana Public Library. **All publications received but disapproved will not be placed in the inmate's property. Upon notification of disapproved items, inmates will have thirty (30) days in which to notify a shift supervisor of the desired disposition of the materials, as previously described. If the shift supervisor is not contacted within thirty (30) days of inmate notification, the materials will be disposed of at the facility's**

      **discretion.**
5) Publications will be disapproved if the material:
   a) Is typical of a security threat, group/gang (i.e. drawings, signs, symbols, codes, literature, documents, etc.)
   b) Contains instructions for the manufacturing of explosives, weapons, drugs, drug paraphernalia, alcoholic beverages, escapes paraphernalia, to affect and/or facilitate an escape, or locksmith techniques.
   c) Advocates violence, racial hatred, or hatred toward any individual, organization, sexual orientation, religion,
   d) or nation in such a way as to create a danger of violence in the jail, or by its nature or content, poses a threat to the security, good order, or discipline of the jail, its employees and/or facilitates criminal activity.
   e) Is of a type that has obviously caused violence or other serious disruption of jail security or good order within the jail or similar facilities.
   f) Is pornographic; or
   g) Are newspapers.
6) Inmates are not authorized to order publications the publisher will bill the inmate for later (COD) or receive publications on a trial basis. All publications shall be prepaid prior to delivery from the publisher. There are no restrictions on who is allowed to order and prepay for publications for an inmate, except when it is determined these items constitute a threat to the safety, security, or good order of the facility.
7) **All publications shall be paperback binding only, without staples, no exceptions**. Simply removing the cover from the book will not make it acceptable.
8) Review of all publications will be done on an individualized basis. When a publication has been disapproved, the mail clerk will advise the inmate in writing[.]

ECF No. 20-6 (emphasis in original).

Defendant Walker, as MCDC's Warden, administers various operations of the detention center and supervises the detention staff. ECF No. 20-7. During the time Plaintiff was incarcerated, the MCDC had the Policy in place banning non-religious newspapers. *Id.* Subscriptions to newspapers for inmates were not cancelled by MCDC staff when received, but any newspapers delivered to the MCDC were placed in the inmate's property. *Id.* at 4.

Defendant Walker testifies in his affidavit that newspapers have often been used to cover

4

lights inside the MCDC. *Id.* at 3. This misuse poses a significant safety and security concern by diminishing the visibility within cells and obstructs the ability of jail staff to conduct necessary visual checks of detainees. *Id.* at 1. Visual checks are crucial to detect inappropriate activities, self-harm attempts, health emergencies, or signs of violence within the cells. *Id.* Defendant Walker asserts that newspapers have also often been used to jam door locks in the MCDC, posing a considerable safety and security risk by impeding necessary access to cells by jail staff and creating a hostile environment that undermines security protocols for both staff and inmates. *Id.* at 2. Defendant Walker states that access is vital for routine checks and emergency situations, and a jammed lock prevents the swift extraction of an inmate should an urgent evacuation be required. *Id.* Newspapers have also been used to clog toilets in the MCDC. Defendant Walker explains that this creates a security risk through flooding which requires lockdowns of the flooded areas. *Id.* The clean-up of these floods also takes deputies away from their essential functions and impacts the regular operations of the MCDC such as feeding, visitation, communications, and sick calls. *Id.* Additionally, the water must be turned off to clear out the clog which limits access to water and toilets for the detainees. *Id.* Due to all these concerns, Defendants Runion and Walker together decided to enact the Policy to ban non-religious newspapers within the MCDC. *Id.* The purpose of the Policy was to significantly reduce the problems with covering the lights, jamming the locks, and clogging the toilets. *Id.*

Defendant Walker further explains in his affidavit that newspapers are uniquely problematic due to: (1) the ability to adhere newspapers to surfaces, including cell ceilings, when moistened; (2) because of the size of newspapers when spread out; and (3) the unique disposable nature of newspapers. Defendant Walker states that detainees tend to treat newspaper as "trash" once read, affording them less care than they do other publications or reading materials such as

5

books, magazines, or other paper. *Id.* at 3. He alleges that light covering, lock jamming, and toilet clogging occurred significantly more with newspapers than with other publications or reading materials. *Id.* According to Defendant Walker, after newspapers were identified as the primary cause of covered lights, jammed locks, and clogged toilets and the Policy was instituted, the MCDC experienced a "significant reduction" with the stated hazards. *Id.* at 3.

Finally, Defendant Walker states in his affidavit, to offer alternative access to news and information, the MCDC maintains a contract with Dish Network to provide access to local and national news for the detainee population. *Id.* at 3-4. Detainees "are empowered to collectively decide which channel to watch, ensuring that no single view of channel is forced upon them." *Id.* at 4. Detainees are also able to receive other information from books, magazines, post cards, letters, phone calls, and visitations. *Id.*

**B. Procedural Background**

On December 9, 2022, Plaintiff filed his Complaint. ECF No. 1. On January 26, 2023, Defendants Runion, Walker, and Adams filed their answer. ECF No. 9. On March 15, 2023, Defendant Landreth filed his answer. ECF No. 13.

In his Complaint, Plaintiff alleges Defendants violated his First, Second, and Fourteenth Amendment rights to freedom of speech, freedom of press, and conditions of confinement. ECF No. 1, p. 4. Specifically, Plaintiff states:

> On or around 7/07/21, I was told by Miller County Detention Center that my Texarkana Gazette Newspaper subscription was denied/cancelled because MCDC doesn't allow inmates to receive newspapers. Upon further investigation I discovered MCDC has a policy that forbids inmates from receiving newspapers or publications. This policy violates the U.S. Constitution.
>
> When I inquired about who was responsible for creating and enacting this policy, I was told by MCDC staff that it was either Sheriff Jackie Runion, Warden Jeffie Walker, or Captain Golden Adams. I could never get a response from any of these officials. My grievances and requests were answered by Officer Admin G (John

6

> Doe) and were marked as "not a grievance" and were never investigated which prevented any relief.

*Id.* at 4-5 (errors in original).  Plaintiff further explains:

> Miller County Detention Center has a policy enacted by its officials (Defendants listed) which bans its inmate population from receiving newspapers or publications. This policy is enforced without any penological or just explanation, this policy, plain and simple, is unconstitutional.

ECF No. 1, p. 5.  Plaintiff asserts both official and individual capacity claims against all Defendants.  *Id.*

On August 24, 2023, Defendants filed their Motion for Summary Judgment (ECF No. 18), Brief in Support (ECF No. 19), and Statement of Indisputable Facts (ECF No. 20).  Defendants argue they are entitled to summary judgment as a matter of law because there are no genuine disputes of fact and: (1) Plaintiff's First Amendment right to receive information and ideas was not violated; (2) the MCDC's ban on newspapers is reasonably related to legitimate penological interest and not an exaggerated response to those interest; (3) Defendants were not personally involved in any alleged violation of Plaintiff's rights; (4) Defendants are entitled to qualified immunity; (5) Plaintiff suffered no physical injury; and (6) there is no basis for official capacity liability.  ECF No. 18, p. 2.

On November 16, 2023, Plaintiff filed a verified Response and Brief in Support.  ECF Nos. 26, 27.  Plaintiff argues that Defendants' Motion for Summary Judgment should be denied as (1) Defendants' actions violated his constitutional rights; and (2) there are disputes of material facts. ECF No. 26.  Plaintiff provides legal arguments in support of his position but does not dispute any facts.  ECF No. 27.

On January 12, 2024, Judge Comstock issued the instant R&R.  ECF No. 29.  On January

7

26, 2024, Defendants filed their objections to the R&R.[3]  ECF No. 30.

## II.  STANDARD OF REVIEW

### A.  Report and Recommendation

The Court may designate a magistrate judge to hear pre- and post-trial matters and to submit to the Court proposed findings of fact and recommendations for disposition.  28 U.S.C. § 636(b)(1).  Within fourteen days of receipt of a magistrate judge's report and recommendation, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* Local Rule 72.2(VII)(C).  After conducting an appropriate review of the report and recommendation, the Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).

"[T]he specific standard of review depends, in the first instance, upon whether or not a party has objected to portions of the report and recommendation."  *Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, 308 F. Supp. 3d 1011, 1015 (N.D. Iowa 2018).  Generally, "objections must be timely and specific" to trigger *de novo* review.  *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990).  However, the Court may, in its discretion, conduct a *de novo* review of any issue in a report and recommendation.  *Thomas v. Arn*, 474 U.S. 140, 154 (1985).  The Court must apply a liberal construction when determining whether *pro se* objections are specific.  *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995).  Non-specific objections may require "full *de novo* review" if the record is concise.  *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994) (requiring *de novo* review when the record was "strikingly brief," and the magistrate judge did not conduct a hearing).  A "clearly erroneous" standard of review applies to the portions of a report

---

[3] On March 6, 2024, Plaintiff filed "Plaintiff's Undisputed Facts" stating that Defendants did not put his newspapers in his property.  ECF No. 31.

and recommendation that are not objected to. *See Grinder v. Gammon*, 73 F.3d 93, 795 (8th Cir. 1996).

### B. Summary Judgment

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hess v. Union Pac. R.R. Co.*, 898 F.3d 852, 856 (8th Cir. 2018) (citation omitted). Summary judgment is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *See id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in the light most favorable to the nonmoving party. *See Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A party that fails to respond to any basis of a motion for summary judgment effectively waives any argument in opposition to that aspect of a

motion for summary judgment. *See Department of Labor v. EJ's Cleaning Services, Inc.*, 2020 WL 1432048 at *1 (E.D. Ark. March 19, 2020) (citing *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009)).

### III. DISCUSSION

While in his Complaint Plaintiff alleges that his First, Second, and Fourteenth Amendment rights were violated, he only asserts facts supporting a First Amendment violation claim arising from the Policy. *See* ECF No. 1. Accordingly, the Court interprets Plaintiff's Complaint as only alleging First Amendment violations. Further, Judge Comstock recommends dismissing all claims against Defendant Landreth with prejudice. ECF No. 29, p. 25. No party objects to that recommendation. The Court agrees with Judge Comstock's recommendation and finds that all claims against Defendant Landreth should be dismissed. The Court will first discuss the Policy and then will address Plaintiff's claims against Defendants Runion, Walker, and Adams in their official and individual capacities.

**A. MCDC Policy**

Defendants argue that the Policy banning newspapers did not violate Plaintiff's First Amendment rights. ECF No. 27, p. 5-6. Judge Comstock recommends allowing Plaintiff's First Amendment claim to remain for further litigation as there remains genuine issues of material fact as to whether Plaintiff had "access to alternative means of exercising his First Amendment rights." ECF No. 29, p. 17. The Court agrees with this recommendation.

The "Constitution protects the rights [of inmates] to receive information and ideas." *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972). "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84, (1987).

"The Supreme Court has made it clear that persons who are incarcerated do not forfeit First Amendment protection of their rights to freedom of speech . . . at the prison gate." *Human Rights Defense Ctr. v. Baxter Cnty. Ark.*, 999 F.3d 1160, 1164 (8th Cir. 2021) (*citing Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). However, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Human Rights Defense Ctr.*, 999 F.3d at 1164 (quoting *Bell*, 441 U.S. at 547). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Restrictions on access to newspapers have been upheld in only limited circumstances." *Morgan v. Rothe*, No. 5:21-CV-05114, 2022 WL 9799601, at *16 (W.D. Ark. July 21, 2022), *report and recommendation adopted*, No. 5:21-CV-05114, 2022 WL 4355141 (W.D. Ark. Sept. 20, 2022) (citing *Beard v. Banks*, 548 U.S. 521 (2006) (upholding prison policy restricting access to newspapers, magazines, and photographs to a small subpopulation of inmates placed in the most restrictive level of prison's long-term segregation unit)).

"To determine whether a jail or prison policy infringes on the First Amendment rights of inmates, as well as those seeking to communicate with them, the relevant inquiry is whether the policy is reasonably related to legitimate penological interests." *Human Rights Defense Ctr.*, 999 F.3d at 1164. The test for determining the reasonableness of a policies relation to legitimate penological interests involves the analysis of four factors: 1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; 2) "whether there are alternative means of exercising the right that remain open to prison inmates"; 3) "the impact accommodation of the asserted constitutional right will have on guards

11

and other inmates, and on the allocation of prison resources generally"; and 4) "the absence of ready alternatives." *Turner*, 482 U.S. at 89-91. An analysis of the four *Turner* factors is "a fact-intensive inquiry requiring careful examination of the policies and institutions at issue in each case." *Simpson v. County of Cape Girardeau, Missouri*, 879 F.3d 273, 282 (8th Cir. 2018).

The Court agrees with Defendants and Judge Comstock's conclusion that the Policy meets the first *Turner* factor in that there is an undisputed rational connection between the Policy and the MCDC's legitimate "interest in lessening the occurrences of light coverings, door jamming, and toilet clogging" with newspapers. ECF No. 29, p. 15. Judge Comstock also concluded, however, that the Policy fails to satisfy the second *Turner* factor and that a genuine issue of material fact remains as to whether Plaintiff had "access to alternative means of exercising his First Amendment rights." *Id.* at 17.[4] Defendants object to this conclusion and state that "the undisputed facts show that Plaintiff had alternative means, under the second *Turner v. Safely* factor, to exercise his First Amendment rights." ECF No. 30, p. 1. The Court agrees with Judge Comstock's conclusion.

The second *Turner* factor is whether there were alternative means for Plaintiff to exercise his First Amendment right. *See Turner* 482 U.S. at 90. "The Supreme Court has made it clear that while alternative means . . . do not have to be 'ideal,' they do have to be 'available.'" *Human Rights Def. Ctr.*, 999 F.3d at 1165 (quoting *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003)); *see also Pell* 417 U.S. at 824. "If the alternative means are illusory, impractical, or otherwise unavailable, this would weigh in favor of [Plaintiff] under the second *Turner* factor." *Human Rights Def. Ctr.*, 999 F.3d at 1165.

Defendants, in their Motion for Summary Judgment and in their objections, rely upon *Thornburgh v. Abbott*, 490 U.S. 401 (1989) stating that "when considering alternative[] means, the

---

[4] Because Judge Comstock determined that the Policy failed to meet the second *Turner* factor, she did not address the third and fourth *Turner* factors. ECF No. 29, p. 17.

right in question should be viewed "sensibly and expansively," and that in light of this, "the Court should consider whether there were alternative means for Plaintiff to receive information and ideas . . . rather than whether there was an alternative means to receive daily news." ECF No. 30, p. 2 (internal quotation marks omitted). Defendants argue that "books, magazines, post cards, letters, phone calls, visitations, and local news provided through Dish Network on the TVs in the pods provide adequate alternative means to receive information and ideas." *Id.* at 3. Further, Defendant's object to the Court's consideration of a grievance that Plaintiff submitted on November 7, 2023, stating that he cannot control the TV and has not been able to watch the news. ECF No. 20-3, p. 2. Defendants submitted this grievance to the Court as an exhibit with their Statement of Undisputable Material Facts. ECF No. 30. However, Defendants states that "[w]hile the record was introduced as a business record, an exception to the hearsay rule, the statement of the Plaintiff within that record should not be considered for the truth of the matter asserted within the grievance for purposes of the motion for summary judgment." ECF No. 30, p. 3. Thus, Defendants argue, because "the undisputed evidence demonstrates more than sufficient alternative avenues for Plaintiff to receive information and ideas, the Defendants are entitled to summary judgement." *Id.*

Judge Comstock appropriately identified Plaintiff's right to receive information and news (ECF No. 29, p. 9-10) and, while applying the appropriate standard, distinguished *Thornburgh* from the present case:

> In *Thornburgh*, the Supreme Court held that a policy allowing the prison warden to ban specific publications because they disrupted the security and safety of the prison was reasonable under *Turner*. The reasonableness was based upon the adequate available and alternative means of expression that remained open to the *Thornburgh* inmates through a broad range of other publications. 490 U.S. 401, 402 (1989). Notably, and importantly, the policy at issue in *Thornburgh* did not completely ban any one type of publication, such as newspapers, and *Thornburgh* can be distinguished as a result. *Id.*

13

ECF No. 29, p. 16. Further, while Judge Comstock did consider Plaintiff's availability to watch the news on TV, she concluded that even if the record was clear as to Plaintiff's access to watch TV, "this may not be an adequate substitution for access to newspaper publications" and genuine issues of material fact still exist as to the second *Turner* factor. *Id.* at 17. The Court agrees.

Defendants statement that they "provide adequate alternative means to receive information and ideas" coupled with the fact that Plaintiff did not dispute this does not mean that Defendants are automatically entitled to summary judgment. The Court finds that there are still questions that remain such as the frequency and quality of access to the alternative means Defendants state they provide to inmates to receive information and ideas. *Jones v. Allen*, No. CIV. 06-2051, 2007 WL 2725218, at *8 (W.D. Ark. Sept. 18, 2007) (finding that where Defendants banned newspapers and magazines, there were genuine issues of material fact precluding summary judgment such as the quality and frequency of access to other materials and whether Plaintiff "even had access to state, local, national, and world news"); *and see Jacklovich v. Simmons,* 392 F.3d 420, 431 (10th Cir. 2004) ("Concerning the inmates' other alternative means to exercise their First Amendment rights, we agree that the ability to listen to the radio or watch television is not an adequate substitute for reading newspapers and magazines."); *Morrison v. Hall*, 261 F.3d 896, 904 (9th Cir. 2001) ("Although radio and television are alternative media by which inmates may receive information about the "outside" world, they should not be considered a substitute for reading newspapers and magazines. Thus, we find that the second *Turner* factor also favors [Plaintiff]."); *Human Rights Defense Ctr. v. Baxter Cnty., Ark.*, 360 F. Supp. 3d 870, 877 (W.D. Ark. 2019) *aff'd*, 999 F.3d 1160 (8th Cir. 2021) (denying summary judgment because analysis of the *Turner* factors depended upon factual issues which were inappropriate for the Court to resolve on summary judgment). Consequently, because genuine issues of material fact exist pertaining to the second *Turner* factor,

the Court cannot adequately weigh the *Turner* factors and finds that summary judgment should not be granted on this basis.

### B. Official and Individual Capacity Claims

Judge Comstock recommends allowing Plaintiff's claims against Defendants Runion, Walker, and Adams, in their official and individual capacities, to remain for further litigation. ECF No. 29. Defendants object and state that because they did not violate Plaintiff's First Amendment rights and no underlying constitutional violation exists, Defendants are entitled to summary judgment in their individual and official capacities. ECF No. 30, p. 4. However, as previously discussed, the Court finds that genuine issues of material fact remain as to the constitutionality of the Policy. Thus, the Court agrees with Judge Comstock's recommendation that the official capacity claims against Defendants Runion, Walker, and Adams, should remain for further litigation.[5]

Defendants assert that "even if the Court finds a material fact remains disputed, Defendants object to the recommended disposition on this issue because they are entitled to qualified immunity in their individual capacities." ECF No. 30, p. 4. Judge Comstock recommends allowing the individual capacity claims against Defendants Runion, Walker, and Adams to proceed, finding that they are not entitled to qualified immunity because a reasonable officer would have known that implementing the Policy violated Plaintiff's rights. The Court declines to adopt this recommendation.

---

[5] The Court treats Plaintiff's official capacity claims as ones against MCDC itself. A governmental entity such as MCDC is liable "under § 1983 only when the entity itself is 'the moving force' behind the deprivation." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In an official-capacity suit, therefore, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1974)). "When a plaintiff can point to a municipal policy that either 'violates federal law, or directs an employee to do so,' 'no evidence is needed other than a statement of the municipal policy and its exercise' to establish a constitutional violation." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (citing *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389-90 (8th Cir. 2007) (additional citations omitted)). Plaintiff has stated official capacity claims and points to the Policy of which exist material issues of fact regarding its constitutionality.

"Suits against officials in their individual capacity seek to impose personal liability upon a government official for actions he takes under color of state law." *Handt v. Lynch*, 681 F.3d 939, 943 (8th Cir. 2012) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). To establish liability against officials in their individual capacity, "the plaintiff must show that the official, acting under color of state law caused the deprivation of a federal right." *Id.* at 943 (citing *Graham*, 473 U.S. at 166); *see also Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").

Plaintiff complains of the denial of his subscription to the Texarkana Gazette because of the Policy banning newspapers. ECF No. 1. Plaintiff states his belief that "either Sheriff Jackie Runion, Warden Jeffie Walker, or Captain Adams" are responsible for "creating and enacting," the Policy. *Id.* at 5.[6] In his affidavit, Defendant Walker stated that he and Defendant Runion "decided together to enact a policy to ban non-religious newspapers within the" MCDC. ECF No. 20-7, p. 2. Further, the Policy indicates it is the Captain's responsibility to disapprove publications for detainees. ECF No. 20-6, p. 4. Defendant Adams was the Captain of the MCDC during the time relevant to Plaintiff's claims. ECF No. 1, p. 2. The Court finds that a factfinder could conclude that Defendants Runion, Walker, and Adams were directly involved in creating or implementing the Policy. *See Elder v. Gillespie*, 54 F.4th 1055, 1065 (8th Cir. 2022) (finding plaintiff alleged sufficient facts that defendants were involved in "creating, applying, or interpreting" policy to survive motion to dismiss); *see also Jackson v. Nixon*, 747 F.3d 537, 545 (8th Cir. 2014) (explaining that personal liability under § 1983 can be established by showing that the defendant was "directly involved in making, implementing or enforcing a policy decision that

---

[6] Plaintiff's only allegation against Defendant Landreth is that he inadequately responded to Plaintiff's grievances. Plaintiff does not make any allegations against Defendant Landreth regarding the Policy itself. As discussed above, the Court adopts Judge Comstock's unobjected recommendation that all claims against Defendant Landreth, in his official and individual capacity, should be dismissed with prejudice.

'created unconstitutional conditions.'") (quoting *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985)).

However, "[q]ualified immunity shields government officials from civil damage liability for discretionary action that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *De La Rosa v. White*, 852 F.3d 740, 743 (8th Cir. 2017) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity is an immunity from suit, not a mere defense to liability." *Id.* "[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 745 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

Determining whether a defendant is entitled to qualified immunity requires a two-step inquiry. *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). The Court must determine "whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right[.]" *Smith v. City of Minneapolis*, 754 F.3d 541, 545-46 (8th Cir. 2014) (quoting *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013)). The Court must also decide whether the implicated right was clearly established at the time of the defendants' alleged misconduct. *Smith v. City of Minneapolis*, 754 F.3d 541, 545-46 (8th Cir. 2014). District courts may consider these questions in any order, but cannot deny qualified immunity without answering both questions in a plaintiff's favor. *Walton v. Dawson,* 752 F.3d 1109, 1116 (8th Cir. 2014).

While the "Constitution protects the rights [of inmates] to receive information and ideas," *Kleindienst*, 408 U.S. at 762, issues of material fact preclude the Court from determining at this stage whether the Policy violated Plaintiff's constitutional rights. Thus, the Court turns to the inquiry of whether the implicated right was clearly established at the time of the defendants' alleged misconduct.

"Clearly established" means "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Smith*, 754 F.3d at 545-46 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Although there need not be a case directly on point for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  Courts must be careful not to define clearly established law at a high level of generality.  *Id.*  Absent a case that is controlling authority in the Eighth Circuit, the Court must "look for 'a robust consensus of cases of persuasive authority.'"  *De La Rosa*, 852 F.3d at 745 (quoting *Ashcroft*, 563 U.S. at 742).

Judge Comstock concluded that a reasonable officer would recognize that the Policy was unconstitutional and that implementing it would violate Plaintiff's rights, thus Defendants are not entitled to qualified immunity.  ECF No. 29, p. 21-22.  The Court disagrees.

Even though the law concerning a prisoner's right to receive information and ideas is clearly established, the officials may still be entitled to qualified immunity if they reasonably could have believed that their conduct did not violate Plaintiff's constitutional rights.  While other circuits have found that inmates have the right to receive newspapers, the same cannot be said for the Eighth Circuit.  *See e.g.*, *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987) (holding prison inmates retained the First Amendment right to receive and read newspapers outside restrictions based on legitimate penological goals); *Mann v. Smith*, 796 F.2d 79, 83 (5th Cir. 1986) ("Because it is undisputed that Mann sought to obtain newspapers and magazines while he was being held at the jail, we must conclude that Mann's constitutional rights were infringed by the jail's policy"); *Spellman v. Hopper*, 95 F. Supp. 2d 1267 (M.D. Ala. 1999) (finding absolute prohibition on subscription magazines and newspapers applied to administrative segregation

inmates in Alabama is not reasonably related to legitimate penological goals). The Court notes that the Eighth Circuit lacks existing precedent stating a constitutional right to read and receive newspapers, specifically, where only one medium to receive information and ideas was banned in connection with a legitimate government interest. *L.G. through M.G. v. Columbia Pub. Sch.*, 990 F.3d 1145, 1148 (8th Cir. 2021) ("[T]he Supreme Court has frequently cautioned lower courts of late not to define rights at issue at a high level of generality because that avoids the crucial question whether the official acted reasonably in the particular circumstances . . . The right must be described with a high degree of specificity to take into account the particular circumstances that the officer faced.") (internal quotations omitted). Further, in at least one instance the Supreme Court has upheld a prison policy banning newspapers and magazines connected to a legitimate government interest where penological interests were concerned. *See Beard*, 548 U.S. 521 (upholding policy banning newspapers in prison's special unit for difficult prisoners where the policy was rationally connected to the legitimate governmental interest put forth to justify it). Thus, the Court finds that Defendants reasonably could have believed that implementing the Policy banning newspapers stemming from a justification of a legitimate government interest—safety and security—did not violate Plaintiff's First Amendment rights. Accordingly, the Court finds that Defendants Runion, Walker, and Adams are entitled to qualified immunity and all individual capacity claims against them should be dismissed.

## IV. CONCLUSION

Upon *de novo* review of the R&R, and for the reasons discussed above, the Court finds that the R&R (ECF No. 29) should be and hereby is adopted in part and rejected in part. Accordingly, Defendants Motion for Summary Judgment (ECF No. 18) is hereby **GRANTED in part and DENIED in part**. All claims against Defendant Landreth are hereby **DISMISSED WITH**

**PREJUDICE**.  All individual capacity claims against Defendants Runion, Walker, and Adams are hereby **DISMISSED WITH PREJUDICE**.  All official capacity claims against Defendants Runion, Walker, and Adams hereby remain for further litigation.

    **IT IS SO ORDERED**, this 19th day of March, 2024.

                                                          /s/ Susan O. Hickey  
                                                          Susan O. Hickey  
                                                          Chief United States District Judge